**Gerald C. MILLER, Personal Representative of the Estate of Stephen T. Miller, Deceased, Appellant–Plaintiff,**

**v.**

**TERRE HAUTE REGIONAL HOSPITAL, Appellee–Defendant.**

No. 11A05–9107–CV–228.

Court of Appeals of Indiana, Fifth District.

July 20, 1992.

Rehearing Denied Sept. 1, 1992.

Roger L. Pardieck, Marcia L. Templeton, Gloria K. Grinnan, Pardieck, Gill & Vargo, Indianapolis, for appellant-plaintiff.

John D. Nell, Martha W. Irwin, Wooden McLaughlin & Sterner, Indianapolis, for appellee-defendant.

BARTEAU, Judge.

Gerald Miller (Miller) appeals the grant of summary judgment in favor of Terre Haute Regional Hospital in his wrongful death action against the Hospital for the death of his son, Stephen Miller. Miller raises the following issues:

I. Whether the Hospital's motion for judgment on the pleadings should have been treated as a motion for summary judgment.

II. Whether Miller's complaint is governed by the Medical Malpractice Act requiring a decision by the medical review panel before the complaint may be filed with the court;

III. Whether Miller's action was timely filed; and

IV. Whether the Miller's action is saved by the journey's account statute.

We affirm.

## FACTS

On November 21, 1986, Stephen Miller died at Terre Haute Regional Hospital (Hospital) where he had been taken for treatment of a gunshot wound. On November 18, 1988, Gerald Miller, Stephen's father, filed a proposed complaint against the hospital with the Commissioner of the Indiana Department of Insurance (Department). Miller alleged the Hospital's negligence caused Stephen's death. On November 28, 1988, the Department sent the Hospital a copy of the proposed complaint as well as a letter indicating that a search of the Department records indicated that the Hospital was not a qualified health care provider under the Medical Malpractice Act (Act). The letter was on Department of Insurance letterhead and was signed by "Donna Pitcher, Manager." Miller received a copy of the letter on November 29, 1988.

On December 20, 1988, more than two years after Stephen's death, Miller filed a complaint in the Vigo Circuit Court against the Hospital. The Hospital moved for judgment on the pleadings, arguing Miller had failed to comply with the provisions of the wrongful death statute by filing his complaint more than two years after Stephen's death. Miller submitted the affidavit of Marcia Templeton in support of his opposition to the Hospital's motion. Templeton, Miller's attorney, averred that on November 29, 1988, she received a copy of the letter the Department sent the Hospital. The Hospital submitted the affidavit of Gerald Dooley, the Hospital's administrator. He averred that he, too, received a copy of the letter and Miller's proposed complaint. Because of these affidavits, the trial court treated the hospital's motion for judgment on the pleadings (under Ind.Trial Rule 12(C)) as a motion for summary judgment and entered judgment in favor of the Hospital.

## SUMMARY JUDGMENT

As a procedural matter, Miller argues that the court abused its discretion by converting the Hospital's motion for judgment on the pleadings to a motion for summary judgment. Miller argues the motion should instead have been treated as a motion to dismiss for failure to state a claim upon which relief may be granted under Ind.Trial Rule 12(B)(6), even though both sides submitted affidavits in support of their respective positions. If the motion had been treated as a T.R. 12(B)(6) motion, Miller would have had an opportunity (10 days) to amend his complaint.

■ Motions made under T.R. 12(B)(6) and under T.R. 12(C) are similar in that both attack the sufficiency of the pleadings. However, the two motions are different in that the T.R. 12(B)(6) motion is made after the complaint is filed and the T.R. 12(C) motion is made after the pleadings are closed. Further, if a motion to dismiss under T.R. 12(B)(6) is sustained, the pleading may be amended within ten days after the party is notified the court sustains the motion. T.R. 12(B). Trial Rule 12(C) does not permit such amendment.

■ Whether the Hospital's motion is considered a 12(B)(6) motion or a 12(C) motion, the trial court was required to consider the motion as a motion for summary judgment because matters outside the pleadings were presented and not excluded by the court. Trial Rule 12(B) provides in part:

If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judg-*

*ment* and disposed of as provided in Rule 56. (emphasis supplied).

Similarly, T.R. 12(C) provides in part:

If, on a motion for judgment on the pleadings, *matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (emphasis supplied).

Contrary to Miller's argument, therefore, the court was required to treat the motions as motions for summary judgment by virtue of the affidavits submitted by both parties.[1]

Our standard for reviewing the denial of a motion for summary judgment is well settled. We apply the same standards employed by the trial court. T.R. 56(C); *Travel Craft v. Wilhelm Mende GMBH* (1990), Ind., 552 N.E.2d 443. Summary judgment may be granted only if the record reveals no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law. *Travel Craft, supra.* Any doubt as to a fact, or an inference to be drawn from the facts, is resolved in favor of the non-moving party. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Cornett v. Johnson* (1991), Ind.App., 571 N.E.2d 572, 574.

## MEDICAL MALPRACTICE OR WRONGFUL DEATH

Miller argues that this suit is governed by the Medical Malpractice Act. Ind.Code 16-9.5-1-1 *et seq.* According to Miller, he could not file suit in court until a medical review panel reviewed the claim. He argues that because a review panel has not reviewed his proposed complaint, his complaint could not be untimely. The Hospital,

---

1. *New Trend Beauty School v. Indiana State Bd. of Beauty Cultural Examiners* (1988), Ind.App., 518 N.E.2d 1101, cited by Miller, does not stand for the proposition that the court may elect not to treat 12(C) or 12(B)(6) motions that include matters outside the pleadings as motions for summary judgment. In *New Trend*, the Board moved for "summary judgment" without submitting anything outside the pleadings in support of its motion. Therefore, the Board's motion, though captioned a motion for summary judgment, was a judgment on the evidence under T.R. 12(C).

on the other hand, argues that this action is governed by the wrongful death statute, I.C. 34–1–1–2, because the Hospital was not a qualified caregiver as defined in I.C. 16–9.5–2–1; therefore, the Act does not affect this action and Miller's complaint is one for wrongful death. According to the Hospital, Miller was required to file his complaint in the proper court within two years of Stephen's death, which he did not do.

Miller cites *Martin v. Rinck, D.O.* (1986), Ind., 501 N.E.2d 1086, to support his argument that this claim is covered by the Act. In *Martin,* our supreme court held that an action for wrongful death due to alleged medical malpractice is covered under the Act and not the wrongful death statute. However, there was no indication in *Martin* that the health care providers had not qualified under the Act. Here, the Hospital argues it was not a qualified health-care provider; therefore, this action is not affected by the Act's provisions.

According to I.C. 16–9.5–2–1, to be "qualified" under the provisions of the Act, a health care provider, or his insurance carrier, must file with the Department proof of financial responsibility and pay a surcharge assessed on all health care providers. Under I.C. 16–9.5–1–5, health care providers who do not qualify under the Act are not covered by the Act's provisions:

> A health care provider who fails to qualify under this article is not covered by the provision of this article and *is subject to liability under the law without regard to the provisions of this article.* If a health care provider does not so qualify, the *patient's remedy will not be affected by the terms and provisions of this article.* (emphasis supplied).

However, Miller argues that under I.C. 16–9.5–9–2, he was required to present his claim to a medical review panel before he could commence his action in court. Indiana Code 16–9.5–9–2 provides:

> Except as provided in subsection (b) and in section 3.5 of this chapter, no action against a *health care provider* may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review

panel established pursuant to this chapter and an opinion is rendered by the panel. (emphasis supplied).

In *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, our supreme court examined the relationship between the provisions quoted above. Guinn filed a proposed malpractice complaint against Light and another dentist with the Department. Guinn was notified three days later that the dentists were not qualified under the Act. However, more than two years after the alleged negligence, the parties selected a chairman for the medical review panel. The chairman notified the parties that it did not have jurisdiction over the case. Thereafter, nearly three years after the alleged negligence and nine months after the Department determined that the dentists were not qualified providers, Guinn filed her complaint against the dentists in superior court. The dentists' motion for summary judgment was granted because Guinn's complaint had not been filed within two years of the alleged negligence. This court reversed, holding that I.C. 16–9.5–9–2 requires complaints against *all* health care providers to be filed with the insurance commissioner, whether or not the providers were qualified under the Act.

The supreme court, however, examined the relationship between I.C. 16–9.5–9–2, which seems to require complaints against *any* health care provider to be presented to the medical review panel before a complaint may be filed in court, and I.C. 16–9.5–1–5, which states that non-qualified health care providers are not affected by the Act. The court, employing well-settled rules of statutory construction, determined that requiring a proposed complaint against a non-qualified provider to be submitted to a review panel first would render 16–9.5–1–5 superfluous. Therefore, Guinn was not required to submit her proposed complaint to a medical review panel before commencing an action in court. The court, however, reinstated Guinn's action against the dentists because it determined its decision clarifying the proper procedure had the characteristics of rule-making. According to the court, Guinn should not be held accountable for failing to follow procedure where the proper procedure was unsettled.

Similarly, if we were to hold that the provisions of the Act are applicable to a non-qualified health care provider, we would be rendering 16–9.5–1–5 without effect. In construing a particular statute in an Act, we must consider the whole act and, if possible, effect must be given to every word and clause therein. *Guinn, supra*, 558 N.E.2d at 823. We read I.C. 16–9.5–1–5 and I.C. 16–9.5–9–2 together to mean that no action against a *qualified* health care provider may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel. Further, an action brought against a non-qualified provider is not affected by the provisions of the Act. Therefore, if the Hospital was not a qualified health care provider at the time of Stephen's death, the action is not affected by the provisions of the Act and the Hospital may be subject to liability under the law.

Miller argues a question of fact remains as to whether the Hospital was qualified under the Act. He asserts that the Department's letter was equivocal on this issue. The letter was on Department of Insurance letterhead and was signed by "Donna Pitcher, Manager." The letter provided in pertinent part:

> "A review of our records at this time does not indicate that you complied with I.C. 16–9.5–1–1, it seq., by having filed proof of financial responsibility and payment of the required surcharge at the time of the alleged malpractice."

Miller points to the phrase "a search of our records at this time" as indicating that the Department was conducting further searches of its records and that it had not made a determination that the Hospital was not qualified. However, the letter does not indicate that a further search was intended. We find the only reasonable conclusion that could be drawn from the letter is that the Hospital was not qualified under the Act.

### TIMELINESS OF COMPLAINT

Miller asserts that his complaint was timely filed because he filed a pro-

posed complaint with the Department within two years after Stephen's death, as required by the Act. However, we have already determined that the Act is not applicable to this dispute. Therefore, this argument fails.

Miller also argues that even for the purposes of the wrongful death statute, he commenced this action timely by filing a proposed complaint with the Department within two years of Stephen's death. Trial Rule 2 provides that "[t]here shall be one (1) form of action, to be known as a 'civil action.'" Under T.R. 3, the action is "commenced by filing a complaint with *the court* or such equivalent pleading or document[2] as may be specified by statute." T.R. 3; *Taylor v. Lewis* (1991), Ind.App., 577 N.E.2d 986. Miller's complaint was filed with the court on December 20, 1988; therefore, his action commenced on that date.

We are aware that if the Hospital had been a qualified care giver, and Miller had filed his complaint in the court without first submitting a claim to the medical review panel, his complaint would have been subject to dismissal. *See Johnson v. Methodist Hosp. of Indiana* (1982), N.D.Ind., 547 F.Supp. 780 (applying Indiana law). The *Guinn* court addressed this potential dilemma as follows:

> Some patients and their attorneys, of course, tender a complaint to the commissioner when they are uncertain whether a provider has qualified under the Act. We view this as prudent in light of the potential for misinformation conveyed over the telephone or through other informal means. *Filing a proposed complaint with the commissioner of insurance tolls the statute of limitations until the commissioner or his agent informs the parties that the provider has not qualified under the Act. The commissioner is the appropriate public officer to make such a determination. If the commissioner determines that the provider has not qualified and so notifies the parties, the statute of limitations begins running again and the*

the filing of a *petition....*" (emphasis supplied).

---

2. *See, e.g.,* I.C. 31–1–11..5–4: "A proceeding for dissolution of marriage shall be commence by

*claimant must file an action in court or risk being barred by the statute of limitations.*

*Guinn, supra,* 558 N.E.2d at 824 (footnote omitted, emphasis supplied). Thus, a claimant is not penalized for filing a proposed complaint with the Department because filing the proposed complaint tolls the statute of limitations until the claimant is notified the provider is not qualified under the Act.

■ We note that in *Guinn* the court stated that the statute of limitations is tolled by filing a proposed complaint. The two-year requirement in the wrongful death statute is not a statute of limitations, but a condition precedent to bringing suit. *Honda Motor Co., Ltd. v. Parks* (1985), Ind.App., 485 N.E.2d 644. However, we find no reason for distinguishing between a case where, as here, the alleged victim dies and a case where the alleged victim is merely injured. Therefore, the running of the two-year period in which Miller had to commence this action was tolled when he filed the proposed complaint, but began to run again once he was notified that the Hospital was not a qualified health-care provider. Thus, the two-year period was tolled on November 18, 1988, when Miller filed his proposed complaint. This was three days before the period would have expired. The period began to run again when he was notified on November 29, 1988, by the manager of the Department, that the Hospital was not a qualified provider. Miller then had three days to file his complaint with the court, which he did not do; therefore, his action was not timely commenced.

**3.** In *Vesolowski v. Repay, M.D.* (1988), Ind., 520 N.E.2d 433, the court held that the journey's account statute applies to medical malpractice claims. In *Willman v. Railing* (1991), Ind.App., 571 N.E.2d 590, Miller, J., dissenting, this court held that the journey's account statute applies to will contests. However, as Judge Miller pointed out in his dissent, a proceeding to contest the validity of a will is purely statutory and can only be brought and successfully maintained in accordance with the relevant statutory provisions. The time limitations for contesting wills create a condition precedent to invoking the jurisdiction of the court to entertain the contest. *Id.* at 592. The journey's account statute, according to Judge Miller, does not operate to give

## JOURNEY'S ACCOUNT STATUTE

■ Miller also argues that even if the statute of limitations had expired before he filed his complaint, the action is preserved by the journey's account statute, I.C. 34–1–2–8, which provides:

> If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution or the action abates, or be defeated by the death of a party, or judgment be arrested or reversed on appeal, a new action may be brought within five (5) years after such determination, and be deemed a continuation of the first, for the purposes herein contemplated.

Assuming, for the purpose of our discussion here only, the journey's account statute applies to wrongful death actions,[3] Miller's argument fails. "In order to claim the saving power of the Journey's Account Statute, a plaintiff must have filed his original cause of action timely." *Vesolowski v. Repay* (1988), Ind., 520 N.E.2d 433, 435. As we have already stated, Miller did not timely commence his action. Therefore, he may not claim protection provided by the journey's account statute.

The grant of summary judgment in favor of the hospital is affirmed.

ROBERTSON and SHARPNACK, JJ., concur.

the court jurisdiction where it had none in the first place.

An action under the wrongful death statute, like a will contest, is purely statutory. Indiana courts have held that the two-year limitation period contained in the statute is a condition precedent to bringing suit and not a statute of limitations. *Honda Motors Co., Ltd. v. Parks* (1985), Ind.App., 485 N.E.2d 644 and cases cited therein. Therefore, there is some question of whether the journey's account statute applies to wrongful death actions. However, we do not reach that question here because it is clear that the journey's account statute cannot operate to save a claim that had not been timely filed with the court.