**NATIONAL RAILROAD PASSENGER CORPORATION, Appellant–Defendant,**

v.

**Robert Charles EVERTON by his legal guardian Geneveve L. EVERTON, Appellee–Plaintiff.**

No. 54A01–9502–CV–40.

Court of Appeals of Indiana.

Aug. 30, 1995.

Transfer Denied Feb. 21, 1996.

Andrew W. Swain, Victor L. Frost, II, Frost & Hugon, Indianapolis, for appellant.

John Emry, Franklin, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The National Railroad Passenger Association ("Amtrak") brings this permissive interlocutory appeal from the trial court's order denying Amtrak's motion for judgment on the pleadings. Robert C. Everton was served alcoholic beverages while a passenger on an Amtrak train. Amtrak employees later found Everton unconscious, and after removing him from the train and delivering him into the custody of law enforcement officers in Crawfordsville, Everton was severely injured in the Montgomery County jail when he attempted to stand but fell. Everton's legal guardian sued Amtrak for negligence because it served Everton even though he was visibly intoxicated.

We affirm.[1]

1. We heard oral argument on June 14, 1995.

### ISSUES

Amtrak presents three issues for our review which we restate as follows:

1. Whether Everton's intentional conduct bars his recovery under the Comparative Fault Act.

2. Whether Amtrak owed Everton a duty after it delivered him into the custody of law enforcement officers.

3. Whether Amtrak's negligence was a proximate cause of Everton's injuries.

### FACTS

The allegations of Everton's complaint state that on December 23, 1991, Everton boarded an Amtrak train in Chicago destined for Indianapolis. Everton was not intoxicated when he boarded the train, but he had taken medication which increased his susceptibility to intoxication. Thereafter, Amtrak employees served Everton alcoholic beverages and, prior to reaching Indianapolis, Everton was found unconscious in the train's restroom. Amtrak employees then called the Crawfordsville Police Department and requested help to remove Everton from the train. Everton could not stand upright and had to be carried into a holding cell at the Montgomery County Jail. He was uninjured when the officers left him.

Everton attempted to stand in the cell, but fell and hit his head against the cell door. Employees at the jail summoned medical technicians who treated a small laceration on Everton's head. After the technicians left, Everton fell several more times while trying to stand. Jail personnel again called for medical assistance after seeing Everton fall, and he fell a final time before technicians arrived to take him to the hospital. Everton underwent emergency brain surgery, but he lost cognitive functions as a result of his injuries.

■ Everton's guardian filed a complaint for damages against the Sheriff of Montgomery County, the City of Crawfordsville and Amtrak. The trial court dismissed the claims against the Sheriff and the City based

on Everton's contributory negligence.[2] The court denied Amtrak's motion for judgment on the pleadings.

## DISCUSSION AND DECISION

### Standard of Review

■ After the pleadings are closed, any party may move for judgment on the pleadings within such time as not to delay the trial. Ind. Trial Rule 12(C). Like a motion to dismiss for failure to state a claim pursuant to Trial Rule 12(B)(6), a Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings.[3] *Miller v. Terre Haute Regional Hosp.* (1992), Ind.App., 596 N.E.2d 913, 915, *vacated in part on other grounds,* Ind., 603 N.E.2d 861. Our review of the trial court's ruling on a Trial Rule 12(C) motion is de novo. *See Wilhoite v. Melvin Simon & Assoc.* (1994), Ind.App., 640 N.E.2d 382, 384 (de novo review for 12(B)(6) motion).

■ In considering a motion for judgment on the pleadings, the movant is deemed to admit for purposes of the motion " 'all facts well pleaded, and the untruth of his own allegations which have been denied.' " *New Trend Beauty School, Inc. v. Indiana State Bd. of Beauty Culturist Examiners* (1988), Ind.App., 518 N.E.2d 1101, 1103 (quoting *Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609, 611). All reasonable inferences are drawn in favor of the nonmoving party and against the movant. *Id.* A motion for judgment on the pleadings should be granted only when it is clear from the face of the complaint that under no circumstances could relief be granted. *Culver–Union Township Ambulance Service v. Steindler* (1994), Ind., 629 N.E.2d 1231, 1235.

### Issue One: Intentional Act

■ Amtrak contends that Everton's repeated attempts to stand were intentional acts that preclude liability despite any allegedly negligent serving of alcohol by Amtrak employees. We disagree.

When Everton filed suit, Indiana's Comparative Fault Act expressly barred recovery for injuries which resulted from the plaintiff's intentional conduct.[4] IND.CODE § 34–4–33–2(A); *see Foster v. Purdue University* (1991), Ind.App., 567 N.E.2d 865, 870, *trans. denied.* "Fault" was defined under the Act as "any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or others, but does not include an intentional act." I.C. § 34–4–33–2(A). While Everton's attempts to stand were intentional, we conclude his actions were not "intentional" as that term is used in the Act.

Amtrak's reliance on our decision in *Foster* is misplaced. There, we interpreted the meaning of an "intentional" act as conduct which results in "consequences desired or consequences which the actor believes are certain or substantially certain to follow." *Id.* at 870. *Foster's* conduct was deemed intentional because he was injured when he deliberately dove head-first onto a waterslide located six to eight feet below him. *Id.* at 865, 870.

Everton's conduct is more akin to the plaintiff's conduct in *Dickison v. Hargitt* (1993), Ind.App., 611 N.E.2d 691. The plaintiff in *Dickison,* who had been drinking beer and smoking marijuana, attempted to prevent himself from falling by grabbing a wooden railing on a balcony. *Id.* at 693. However, the railing was rotted and collapsed under the plaintiff's weight, and he

---

2. "Because the Comparative Fault Act does not apply to tort claims against governmental entities, *see* IC 34–4–33–8, contributory negligence operates to bar recovery in actions brought under the Tort Claims Act." *Indiana Dept. of Highways v. Naumann* (1991), Ind.App., 577 N.E.2d 994, 995 n. 2, *trans. denied.* The trial court determined from Everton's complaint that his intoxication on the train violated federal law and was negligence per se which precluded recovery against the Sheriff and City. Everton does not challenge that finding on appeal.

3. The only difference between the two motions is that because a 12(C) motion is filed after the pleadings are closed, the plaintiff is not entitled to amend the complaint if the motion is granted. *See* Ind.Trial Rule 12(B); *Miller v. Terre Haute Regional Hosp.* (1992), Ind.App., 596 N.E.2d 913, 915, *vacated in part on other grounds,* Ind., 603 N.E.2d 861.

4. Effective July 1, 1995, the Comparative Fault act no longer precludes recovery as a result of the plaintiff's intentional conduct. *See* P.L.–1995, SEC. 8.

was injured in his fall to the ground below. *Id.* This court noted that while the plaintiff in *Dickison* intentionally consumed beer and smoked marijuana, "he did not intentionally fall through the defective railing and crack his head open." *Id.* at 698. We characterized the fall as "accidental" rather than intentional. *Id.*

Therefore, we cannot agree with Amtrak that since Everton had intentionally attempted to stand several times, his injuries were "self-inflicted" as were the plaintiff's injuries in *Foster. Id.* The inference that Everton believed serious injuries were a "substantially certain" consequence of his actions is not the only one which may be drawn from the allegations of Everton's complaint. *Foster,* 567 N.E.2d at 870. Instead, in determining whether Everton committed an intentional act, the focus is not on whether Everton's attempts to stand were intentional but whether his subsequent falls were intentional. *See Booker, Inc. v. Morrill* (1994), Ind. App., 639 N.E.2d 358, 362 (in dram shop case involving drunk driving injuries, focus was not on voluntariness of drinking and driving but on whether driving off road, through field, wire fence and 12-foot-high fence into house was intentional).

■ A plaintiff may act intentionally, yet not engage in "intentional" conduct under the Comparative Fault Act, if the injurious consequences of that conduct were neither intended nor could have been reasonably appreciated. *See Dickison,* 611 N.E.2d at 698. When injury follows consumption of alcoholic beverages, our courts have held that deliberate ingestion of alcohol is not an intentional act. *See Booker,* 639 N.E.2d at 362; *Dickison,* 611 N.E.2d at 698. Indeed, in *Foster* the plaintiff's intentional conduct was jumping off a wall into a shallow pool and, while intoxication affected the plaintiff's judgment, consumption of alcohol was not determined to be the "intentional" act. *See Foster,* 567 N.E.2d at 870.

Everton's injuries were caused by his falls, not by his attempts to stand. Merely trying to stand is not the type of inherently dangerous act that is considered "intentional" under

the Comparative Fault Act because injury is not a consequence substantially certain to follow from standing. The intentional act in this case was not, as the dissent contends, Everton's voluntary and deliberate ingestion of alcohol.

Thus, we cannot say as a matter of law that when Everton stood he intended to fall and injure himself. The allegations of Everton's complaint support the inference that his injuries were accidental rather than intentional. Amtrak has failed to show that Everton's intentional conduct in attempting to stand was an intentional act which bars his recovery as a matter of law.

### Issue Two: Duty

Amtrak appears to argue that it no longer owed Everton a duty after it had relinquished custody of him to the Montgomery County Sheriff's Department. According to Amtrak, when it removed Everton from the train, it fulfilled the duty it owed both to Everton and to its other passengers to safeguard them from Everton. Otherwise, Amtrak contends, if removing Everton from the train did not discharge the duty it owed him, "bartenders ... could never fulfill the duty to safeguard other patrons from drunks." Brief of Appellant at 22.

■ A duty may arise from common law principles of negligence or from the violation of a statute. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 329, *trans. denied.* The Dram Shop Act provides in relevant part:

> It is unlawful for a person to sell, barter, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

IND.CODE § 7.1–5–10–15(a). Our supreme court has interpreted this statutory prohibition as the duty to refrain from providing alcoholic beverages to intoxicated persons. *Gariup Constr. Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227. Violation of this statute may provide evidence of negligence and serve as a basis for civil liability.[5] *Picadilly,*

---

5. Civil liability for a violation of the Dram Shop Act is not unlimited. Liability is imposed only

where "the person furnishing the alcoholic beverage had actual knowledge that the person to

*Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, 1220; *Parrett v. Lebamoff* (1980), Ind.App., 408 N.E.2d 1344, 1345.

■■■ The allegations of Everton's complaint state that Amtrak employees continued to provide Everton with alcoholic beverages after it became apparent that he was highly intoxicated and that its employees knew he was visibly intoxicated but continued to provide him with alcohol. For purposes of Amtrak's motion for judgment on the pleadings, we must accept these allegations as true. *See Mirka v. Fairfield of America, Inc.* (1994), Ind.App., 627 N.E.2d 449, 450, *trans. denied.* A plaintiff is only required to put the defendant on notice that he has a justiciable claim and is entitled to relief under *some legal theory. Browning v. Walters* (1993), Ind.App., 616 N.E.2d 1040, 1043.

■ We conclude that Everton has alleged facts sufficient to establish that Amtrak owed him a duty under the Dram Shop Act. "While the question of duty, whether based on the common law or the violation of a statute, is a question of law, we consider the question of whether a statute has been violated ... to be reserved for the trier of fact." *Rubin,* 550 N.E.2d at 330. On both of these grounds, Everton's complaint states a claim sufficient to withstand Amtrak's Trial Rule 12(C) motion.[6]

There is no merit to the contention that Amtrak no longer owed Everton a duty once he was removed from the train and delivered to law enforcement officers. Our courts have never interpreted the Dram Shop Act as cutting off a provider's liability to the intoxicated patron at the tavern door. *See, e.g., Picadilly,* 519 N.E.2d at 1219 (liability where patron left bar and involved in accident with plaintiff); *Thompson v. Ferdinand Sesqui-*

*centennial Comm., Inc.* (1994), Ind.App., 637 N.E.2d 178, 179 (patron left beer garden and killed in motorcycle accident); *Parrett,* 408 N.E.2d at 1345 (patron left tavern and killed in automobile accident).

■ Further, Amtrak's duty to Everton is defined by the Dram Shop Act, and when the dissent speaks of "strict liability," it does not address the question of duty but whether Amtrak's negligence was a proximate cause of Everton's injuries. The concepts of duty and proximate cause are related. *See Webb v. Jarvis* (1991), Ind. 575 N.E.2d 992, 995; *Prosser & Keeton on the Law of Torts* § 42, at 274 (5th ed.1984). Whereas "duty" is confined to questions of the "existence of some relation between the defendant and the plaintiff which gives rise to the obligation of conduct in the first instance," proximate cause concerns the connection between that obligation, once it has arisen, and the consequence which have followed. *Prosser & Keaton* § 42, at 275. In other words, proximate cause is "merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct." *Id.* § 41, at 264. Proximate cause places an effective limit on dram shop liability, an issue we consider below. *See* Issue Three; IND. CODE § 7.1–5–10–15.5(b)(2) (person furnishing alcoholic beverage not liable in civil action unless intoxication of person served was proximate cause of injury alleged in complaint).

■ The Sheriff owed Everton a duty of care while he was incarcerated. *See* IND. CODE § 36–2–13–5(a)(7); *Weatherholt v. Spencer County* (1994), Ind.App., 639 N.E.2d 354, 355. However, even if the Sheriff was negligent in supervising Everton in the holding cell, Amtrak's "duty" to Everton was not

whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished...." IND.CODE § 7.1–5–10–15.5(b)(1).

**6.** Some twenty years ago our supreme court also recognized the common law duty of persons selling alcoholic beverages to exercise due care. *Elder v. Fisher* (1966), 247 Ind. 598, 607, 217 N.E.2d 847, 853; *see Picadilly,* 519 N.E.2d at 1219 (reaffirming *Elder* ). Therefore, the dissent's determination that Amtrak did not owe

Everton a common law duty of care is unnecessary. This court need not consider the question of whether a provider of alcoholic beverages, such as Amtrak, owes a common law duty to refrain from serving intoxicated patrons. Because there are facts alleged in the complaint sufficient to establish that Amtrak owed Everton a statutory duty under the Dram Shop Act, we are not, as the dissent contends, applying a common law duty analysis in this case.

ipso facto extinguished because Everton had been entrusted to the care of the Sheriff who also owed him a duty. Absent a duty, there can be no liability for negligence, but persons jointly bound to perform a duty are jointly and severally liable for negligently discharging their respective duties. *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1218; *Peru Heating Co. v. Lenhart* (1911), 48 Ind.App. 319, 324, 95 N.E. 680, 682.

▮▮▮▮ Likewise, an act of negligence need not be the only proximate cause, and liability arises if the act, concurring with one or more other causes, is a proximate cause of the injury. *Elder*, 247 Ind. at 606, 217 N.E.2d at 852. A defendant is not relieved of liability because he is responsible for only one of such causes. *See Town of Fowler v. Linquist* (1894), 138 Ind. 566, 573, 37 N.E. 133, 136. Amtrak and the Sheriff owed concurrent duties to Everton, and each may be liable for breach of their respective duty. *See Elder*, 247 Ind. at 606, 217 N.E.2d at 852.[7]

▮▮▮ Finally, the dissent's concern that imposition of liability in this case will result in poor public policy is unfounded. The Dram Shop Act represents a legislative judgment and the declared public policy of this state that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowingly serving visibly intoxicated patrons. It would circumvent the policy underlying dram shop legislation to allow a provider, once negligent, to "wash its hands" of liability simply by delivering the intoxicated patron into the custody of law enforcement officers. The practical effect of such a rule would be that at "last call," every vendor of alcohol could discharge its duty and relieve itself of dram shop liability by summoning law enforcement officers to take into custody those patrons whom the vendor had overserved.

Amtrak does not and cannot dispute that it owed Everton a duty to refrain from serving

him alcoholic beverages when he was visibly intoxicated. We conclude, as a matter of law, that Amtrak's duty to Everton continued after Everton was removed from the train.

### Issue Three: Proximate Cause

▮▮▮ We last address whether Amtrak is entitled to judgment on the pleadings because its conduct of serving Everton alcohol in a negligent manner was not a proximate cause of his injuries. Amtrak argues this issue as two separate, but related, theories: (1) the negligence of jail personnel constitutes an intervening cause that relieves Amtrak of liability and (2) Everton's injuries were not a foreseeable consequence of Amtrak's negligence. We cannot agree with either contention.

▮▮▮ An intervening cause may serve to cut off the liability of one whose original act or omission sets in motion the chain of events or circumstances leading to the injury. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158. An intervening cause is a superseding cause, not a concurrent and contributing cause, which *is itself* the immediate and direct cause of the injury. *Id.* The fundamental test in determining a defendant's liability is the test of foreseeability of the resultant injury. *Id.*

Everton alleged in his complaint that he was already highly intoxicated and that he was uninjured when he was delivered to the jail. Everton claimed that "[b]ecause of his extremely intoxicated state," he suffered a head injury after he lost his balance and fell. Record at 17. The complaint states that Everton's injuries were the proximate result of both Amtrak's negligence in providing him alcohol when he was visibly intoxicated and the Sheriff's negligence in failing to properly supervise and monitor him.

▮▮▮ In this case we cannot say, as a matter of law, that the negligence of jail personnel was an intervening cause of Everton's injuries. The foreseeability of an inter-

---

7. The dissent's emphasis on the fact that the Sheriff had sole custody and control of Everton when he was injured is misplaced. Amtrak's duty arose when it served Everton alcoholic beverages on the train and had a right to control his consumption. By the time Everton's intoxication required his removal from the train, Amtrak had already breached its duty. The question then becomes whether Everton's injuries in the Sheriff's custody were proximately caused by Amtrak's breach.

vening cause and, thus, whether the defendant's conduct is the proximate cause of the plaintiff's injuries, is a question of fact for the jury's determination. *Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10, 15; *Elder*, 247 Ind. at 606, 217 N.E.2d at 852. The allegations of Everton's complaint do not support only the conclusion that, absent Amtrak's negligence, the Sheriff's negligence was the sole cause of the injuries. *See Havert*, 452 N.E.2d at 158. Amtrak has not demonstrated that it is entitled to judgment on the pleadings because its liability to Everton was extinguished by an intervening cause.

▮ There is also no merit to Amtrak's argument that, based on the pleadings, Everton's injuries were an unforeseeable consequence of its negligence. Our courts have held that the risk of harm is a foreseeable consequence of negligently furnishing alcoholic beverages to intoxicated patrons. *See Picadilly*, 519 N.E.2d at 1220 ("foreseeable risk of harm is undisputable"); *Parrett*, 408 N.E.2d at 1346 ("risk of harm to the intoxicated person whose faculties are visibly impaired is readily foreseeable"). Further, an actor need not foresee the exact manner in which harm will occur but must, in a general way, foresee the injurious consequences of his actions. *Rauck v. Hawn* (1990), Ind.App., 564 N.E.2d 334, 339. "[I]t is for the jury to determine whether or not the injurious consequences that resulted from negligence are such as ought to have been reasonably foreseen...." *Elder*, 247 Ind. at 606, 217 N.E.2d at 852.

A trier of fact could reasonably infer from the allegations of Everton's complaint that injury was a foreseeable consequence of alcohol negligently served to a visibly intoxicated passenger who was later removed from the train.

## CONCLUSION

We hold that Amtrak was not entitled to judgment on the pleadings. Everton's attempts to stand were not intentional acts which bar recovery under the Comparative Fault Act. Amtrak owed Everton a duty, and questions of fact remain on all the remaining issues. The order denying Amtrak's motion is affirmed.

Affirmed.

BAKER, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. Everton knew he was taking a medication that would not tolerate alcohol. Yet, he purposely ingested several alcoholic drinks. His drunken conduct on the Amtrak train from Chicago to Indianapolis was so intolerable that he was taken off the train by the Crawfordsville Police Department. Everton was arrested and charged with public intoxication and intoxication on a common carrier. While in the sole custody of the Crawfordsville authorities, Everton fell several times while in his jail cell and injured himself.

The trial court denied Amtrak's motion for judgment on the pleadings. In affirming this ruling, the Majority has misinterpreted *Foster v. Purdue University* (1991), Ind.App., 567 N.E.2d 865. Too, it has engrafted multiple duties and strict liability upon the Dram Shop Act which were never intended by the Indiana Legislature. IND.CODE § 7.1–5–10–15(a). The Majority has created a public policy which ignores personal responsibility for one's intentional conduct. The trial court should be reversed for these reasons.

First, Everton was injured because he attempted to stand but fell numerous times in his jail cell.[8] That he continued to stand and fall, even after sustaining injury and receiving medical treatment, was an intentional act. *Foster, supra*, is applicable and controls. In *Foster*, the intoxicated plaintiff climbed a wall and dove about eight feet to a makeshift water slide resulting in his injury. *Id.* at 867. This court held that the injury was intentional and further held that the intoxicated plaintiff could not recover under the Comparative Fault Act, which expressly ex-

---

8. I disagree with the Majority's characterization of Everton's standing and falling as two separate acts. Under the circumstances of this case, standing and falling was one continuous act from which Everton knew injury was substantially certain to follow.

cludes intentional acts. IND.CODE § 34–4–33–2(A). Accordingly, it does not matter that Foster did not intend the consequences of his actions or that his judgment might be affected by his intoxication. *Id.* at 870.

As the Majority correctly states, intent in *Foster* referred to "consequences desired or consequences which the actor believes are certain or substantially certain to follow." *Id.* at 870. Under this definition, Everton's conduct was certainly intentional. While in the sole custody of the police, Everton fell several times in his jail cell, which would have indicated to him that he was in no condition to stand. The *Foster* court concluded that Foster experienced no accident. It further concluded, "While Foster's good judgment may have been affected by his level of intoxication, his action was nonetheless 'intentional.'" *Id.* The same holds true for Everton.

Secondly, I disagree with the Majority's common law duty application to Everton's factual posture. The Majority cites *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, to support their position. *Picadilly* is not applicable here for several reasons. *Picadilly* is not an intentional injury case. It involves a young lady who purchased liquor in an establishment which was very much akin to a "supermarket". *Id.* at 1219. After consuming the liquor and leaving the establishment for her home in Hope, Indiana, she became lost and "entered an interstate highway going in the wrong direction." *Id.* Her automobile collided with Colvin's automobile. Colvin was injured and brought a civil action against Picadilly. Relying primarily on *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, Justice Dickson wrote:

> The common law liability applies when a negligent act or omission is a proximate cause of an injury, which injury 'need be only a natural and probable result thereof; and the consequence be one which in the light of circumstances should reasonably have been foreseen or anticipated.'

*Picadilly, supra* (citing *Elder,* 247 Ind. at 605, 217 N.E.2d at 852). After Everton's custody had been delivered to the Crawfordsville Police, a governmental entity with professional officers trained to handle persons in Everton's intoxicated condition, any speculation on the part of Amtrak that Everton would be injured as "a natural and probable result [of his intoxication] . . . or . . . [that his injury] in the light of circumstances should reasonably have been foreseen or anticipated" is absurd. *Id.* At this point in time, any common law duty terminated. All possible control by Amtrak over Everton's conduct terminated. No right to control Everton's conduct was available—no right to control Everton's conduct was possible. Everton was absolutely in the sole custody and control of the Crawfordsville police. Everton was under arrest and charged with public intoxication and intoxication on a common carrier. This court in *Foster* concluded that "a right to control another person's actions is essential to the imposition of a corresponding duty." *Id.* at 869 (citing *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534, *trans. denied*). At the time of Everton's injury, the Crawfordsville Police had an absolute right of control over Everton's conduct. Amtrak had none.

No common law duty was owed Everton by Amtrak. If one indeed existed, it was extinguished and laid to rest when the Crawfordsville Police took custody of Everton and charged him with public intoxication, IND. CODE § 7.1–5–1–3, and intoxication on a common carrier, IND.CODE § 7.1–5–1–6.

Thirdly, the duty imposed by the Dram Shop Act ceased to exist when Amtrak turned Everton over to the Crawfordsville police authorities. Why? Because this was the "act" that pulled the blind down in front of foreseeability. Without reasonable foreseeability, there can be no proximate cause. An act is the proximate cause of an injury when such injury is the reasonably foreseeable, natural and probable consequence of the act. *Schaffer v. Roberts* (1995), Ind.App., 650 N.E.2d 341, 342–343. As a matter of law, Amtrak could not reasonably foresee that Everton, whether drunk or sober, would suffer injuries in his jail cell while under police protection. The Crawfordsville police had complete custody and control of Everton. He had been charged with violating the law. The police have a statutory duty to safeguard individuals such as Everton in their custody.

IND.CODE § 36–2–13–5(a)(7). When police take custody of an intoxicated person, they have the option of taking the person to jail, to the person's home or to the home of a relative, or to a medical treatment facility. IND.CODE § 12–23–15–1. The "act" of turning Everton over to the Crawfordsville police cut off any future foreseeability. It severed Amtrak's duty to Everton under the Dram Shop Act.

By stopping the train at Crawfordsville and calling the police, Amtrak was aiding the enforcement of the criminal law and seeking to protect Everton as well as the other passengers on the train from Everton's conduct. *See Heger v. Trustees of Indiana University* (1988), Ind.App., 526 N.E.2d 1041, 1043, *trans. denied* (a common carrier is bound to exercise reasonable care to ensure the safety of its passengers). It would be deplorable public policy to conclude that Amtrak's liability extended beyond the point that police had exclusive control over Everton. To hold that no reasonable action can be taken under the Dram Shop Act to terminate a duty once it has been assumed would be to turn a deaf ear to reason. Our General Assembly did not intend that the citizens of Indiana should be responsible for police actions. Because this is what the Majority proposes, I dissent.